# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CASE NO. 21-cr-204 |
| ) | CHIEF JUDGE BERYL A. HOWELL |
| BLAKE AUSTIN REED ) | |

## BLAKE AUSTIN REED'S SENTENCING MEMORANDUM

Blake Austin Reed entered the U.S. Capitol Building on January 6, 2021, and remained in the restricted building for approximately twenty-four (24) minutes. At no time either before entering the building, while in the building, or after leaving the building did Mr. Reed engage in any threatening or assaultive behavior. In addition, at no time did Mr. Reed commit any act of vandalism while at the U.S. Capitol, either in the building or on its grounds. Mr. Reed walked into the U.S. Capitol, walked through the U.S. Capitol (while videoing on his telephone his walking through the U.S. Capitol), and walked out of the U.S. Capitol. Due to this behavior, Blake Austin Reed entered a guilty plea to a misdemeanor.

Mr. Reed has no criminal history, remains gainfully employed, has complied with all conditions of pretrial release, did not threaten or assault anyone while at or near the U.S. Capitol, and did not vandalize anything while in Washington, D.C. Mr. Reed hereby requests this Honorable Court to sentence him to probation for a term that the Court deems appropriate. In justifying the requested sentence, Mr. Reed will address the relevant §3553(a) factors.

### Nature and circumstances of the offense

Mr. Reed accurately stated his conduct while at the U.S. Capitol in the preceding paragraphs, facts which comprise the offense of conviction. The presentence investigation report (in paragraphs 21-33) contains additional facts regarding Mr. Reed's conduct that occurred before and after January 6, 2021.

The video evidence in this case (provided by the government and by Mr. Reed himself) shows Mr. Reed entering the U.S. Capitol in a calm fashion without vandalizing anything, pushing anyone, or resisting law enforcement. While in the U.S. Capitol, Mr. Reed walked calmly by himself (for much of the time) through the U.S. Capitol while holding up his telephone and videoing the inside of the U.S. Capitol. At one point in time, he even commented on video about the how great the architecture in the U.S. Capitol is. He left the U.S. Capitol in a peaceful manner.

The Court is aware that a two-level guideline adjustment for obstruction of justice has been included in the Sentencing Guidelines calculation in this case. This is due, in part, to when law enforcement executed a search warrant at Mr. Reed's residence and seized a telephone that Mr. Reed had been using near in time to the execution of the search warrant, and then later determining that the seized telephone was not the telephone Mr. Reed had used to video his actions at the U.S. Capitol. The telephone that was seized was a telephone that Mr. Reed had owned for over two and one-half years.

The government requested that Mr. Reed turn over the telephone he used to video his actions at the U.S. Capitol. Mr. Reed, through counsel, turned over the telephone. The telephone did not have a SIM card in it because the SIM card was in the telephone that law enforcement seized from his residence.

Mr. Reed retained the original telephone to preserve evidence that would show that he entered the U.S. Capitol, traversed the U.S. Capitol, and exited the U.S. Capitol without causing any damage to it. He believed that law enforcement was going to interview or arrest him, and he wanted to make sure he would have his own video to show exactly what he did and did not do

while at the Capitol. He was not aware at the time he kept the telephone that the government would have video evidence supporting his position.

### History and character of Mr. Reed

Mr. Reed is thirty-six (36) years old. He was born and raised in the Memphis, Shelby County, Tennessee area. His parents are retired and have been married for almost fifty (50) years. He has five siblings, all of whom live in Shelby County, Tennessee. Mr. Reed has no children.

Mr. Reed has a college education, having graduated with a bachelor's degree from the University of Memphis in 2009. He has maintained consistent employment focused on home building. According to many who wrote character letters on his behalf, he is very good at his job.

Mr. Reed has no previous criminal history and has been on pretrial release for over fourteen (14) months with no issues.

Mr. Reed has attached to this memorandum eighteen (18) character letters for the Court's review. The letters are very consistent, no matter who the writer. Mr. Reed is obviously a caring, giving, God-loving, hard-working, friend and family man. This conviction is out of character for him, and he regrets his decision that brings him before the Court.

### The need for the sentence imposed
**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
**(B) to afford adequate deterrence to criminal conduct;**
**(C) to protect the public from further crimes of the defendant; and**
**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

A sentence of up to five years of probation would reflect the seriousness of this misdemeanor offense as reflected by the specific conduct of Mr. Reed, would promote respect for the law and provide a just punishment for the individual actions of Mr. Reed. Such a sentence will

afford adequate deterrence to criminal conduct and will protect the public from further crimes of Mr. Reed. As the Court is aware, probation is not a non-punishment. It is a very serious punishment. Probation restricts one's liberty, holds one accountable for years to a supervisory authority, and allows a supervisory authority to monitor one's conduct. It is an appropriate punishment in this case.

**The kinds of sentences available and the sentencing range**

Mr. Reed pled guilty to entering and remaining in a restricted building, a misdemeanor. He is subject to a maximum sentence of one year imprisonment, a maximum term of supervised release of not more than one year, and a $100,000.00 fine. The Sentencing Guidelines range is between 0 months and 6 months. The Court may either sentence Mr. Reed to a sentence of up to one year imprisonment followed by a one-year term of supervised release, or the Court may sentence Mr. Reed to a sentence of up to five years of probation, with conditions associated with the probation.

If the Court were to sentence Mr. Reed to any imprisonment, the Court will be limited to only one year of supervision for Mr. Reed following his service of his sentence. Alternatively, if the Court does not sentence Mr. Reed to any term of imprisonment, the Court can have supervisory authority over Mr. Reed for up to the next five years. The Court will have the ability to monitor Mr. Reed's conduct for a much longer period of time if he is sentenced a term of probation in this case.

**The need to provide restitution to the victims in this case**

Mr. Reed, pursuant to his plea agreement, has agreed to pay restitution in the amount of $500.00.

One final issue that needs to be addressed herein is the presentence report writer's statements on page 12 (footnote), page 13 (paragraph 68), page 14 (paragraphs 70 and 72), page 15 (paragraph 75), and page 17 (footnote) that releases were not provided and that neither a self-employment questionnaire nor any supporting documentation was returned to the officer (see page 15, footnote).  Releases and self-employment information were provided to the presentence report writer via email on February 19, 2022, at 1:35 p.m. Central time.  The original presentence investigation report was prepared on February 23, 2022, after the writer had received the releases and the self-employment information.

Based upon the foregoing, Mr. Reed hereby requests this Honorable Court to sentence him to probation for a term that the Court deems appropriate.

                Respectfully submitted,

                s/ ***Paul Bruno***
                Paul Bruno, B.P.R. #17275
                Luke Evans, B.P.R. #23620
                Bulloch, Fly, Hornsby & Evans PLLC
                P.O. Box 398
                Murfreesboro, Tennessee 37133-0398
                Telephone: (615) 896-4154
                Email:  pauljbruno@bfhelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing *Blake Austin Reed's Sentencing Memorandum* has been emailed to Jamie L. Carter, Assistant U.S. Attorney, U.S. Attorney's Office for the District of Columbia, 555 4th Street NW, Room 3640, Washington, D.C. 20530 and to Mitra Jafary-Hariri, 211 W. Fort Street, Suite 2001, Detroit, Michigan 48226, on this the 1st day of April, 2022.

                s/ ***Paul Bruno***
                Paul J. Bruno